**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dusty Michelle Woolley, | No. CV-22-00546-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Dusty Michelle Woolley ("Plaintiff") seeks judicial review of a decision by the Social Security Administration ("SSA") Commissioner (the "Commissioner") denying her application for Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. § 301 *et seq.* (the "Act"). (Doc. 1). Plaintiff filed her Opening Brief (Doc. 16), the Commissioner filed a Response (Doc. 18), and Plaintiff filed a Reply (Doc. 19). Upon review of the briefs and the Administrative Record (Doc. 13, "AR"), the Court reverses the Administrative Law Judge's October 28, 2021, decision (AR at 27–40) and remands for further proceedings.

**I.     Background**

On April 29, 2019, Plaintiff filed an application for SSI benefits under Title XVI of the Act, alleging a disability onset date of January 30, 2019. (*Id.* at 27). Plaintiff was forty-three years old at the time of her alleged onset date and has a tenth grade education. (AR at 38, 51). Her past relevant work includes employment as a restaurant manager. (*Id.* at 38). She has a history of a lumbar spine surgeries, which resulted in a spinal cord

stimulator implant due to ongoing pain and other symptoms, and subsequent revision surgeries. (Doc. 16 at 9). Plaintiff claims she is unable to work because she suffers from chronic pain in her low back, hip, and legs that causes difficulty standing and walking. (*Id*. at 9–10).

Plaintiff's claims were initially denied on November 14, 2019, and upon reconsideration on April 9, 2020. (AR at 27). After holding a hearing on October 13, 2021, the Administrative Law Judge ("ALJ") again issued an unfavorable decision on October 28, 2021 (*id*. at 27–40) (the "October Decision").

## II. The ALJ's Five Step Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The ALJ follows a five-step process[1] to determine whether a claimant is disabled under the Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)–(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id*. If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity"[2] in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id*. § 416.920(a)(4)(iv)–(v).

---

[1] The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[2] A claimant's residual functional capacity is defined as their maximum ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. *See* 20 C.F.R. §§ 404.1545(a), 404.1520(e), 416.920(e).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013); *see also* 20 C.F.R. § 404.1520(a)–(g). If the ALJ determines no such work is available, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v).

The ALJ's findings in the October Decision are as follows:

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since April 29, 2019. (AR. at 29). At step two, he found Plaintiff has the following severe impairments: degenerative disc disease of the spine and synovial cyst of popliteal space of the left knee. (*Id*. at 29–30 citing 20 C.F.R. § 416.920(c)). At step three, he determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id*. at 33).

At step four, the ALJ found Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[3] with several exceptions: Plaintiff "can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs. She can frequently stoop, kneel, and crouch, occasionally crawl and must avoid moving machinery and unprotected heights." (*Id*. at 24–38). The ALJ determined Plaintiff is unable to perform past relevant work given her RFC assessment. (*Id*. at 38). At step five, however, the ALJ found Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id*. at 38–39). Plaintiff was therefore deemed not disabled under the Act. (*Id*. at 40).

The SSA Appeals Council denied Plaintiff's request for review of the October Decision, thus adopting the Decision as the agency's final decision. (*Id.* at 1–3). This appeal followed. On April 5, 2022, Plaintiff filed a Complaint under 42 U.S.C. §§ 405(g), 1383(c)(3) requesting judicial review and reversal of the Commissioner's decision. (Doc. 1).

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

### III. Standard of Review

In determining whether to reverse a decision by an ALJ, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)); 42 U.S.C. §§ 405(g), 1383(c)(3)). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Garrison*, 759 F.3d at 1009 (9th Cir. 2014) (internal citation omitted). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ must "set forth the reasoning behind its decisions in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). This is because district courts may only review those reasons the ALJ places on the record and cannot speculate what the ALJ's reasoning might have been based on other evidence available. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

"Harmless error principles apply in the Social Security Act context." *Molina v.*

*Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id*. Typically, the claimant bears the burden of showing that an error is harmful. *Id*. at 1111 (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**IV.  Discussion**

Plaintiff contends the ALJ erred for two reasons: (1) the ALJ improperly discounted Plaintiff's symptom testimony; (2) the ALJ improperly rejected the assessment by examining physician Lise A. LaBarre, M.D. ("Dr. LaBarre"). The Court will address each of Plaintiff's arguments in turn.

**A.  Symptom Testimony**

First, Plaintiff claims the ALJ failed to give specific, clear, and convincing reasons for rejecting her symptom testimony. (Doc. 16 at 11–19). The Court agrees.

**1.  Legal Standard**

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). First, the ALJ must determine whether Plaintiff presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison*, 759 F.3d at 1014. "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, if there is no evidence of malingering, the ALJ may reject the Plaintiff's symptom testimony only by giving specific, clear, and convincing reasons. *Id*. at 1015; *Brown-Hunter*, 806 F.3d at 488–89. "This is not an easy requirement to meet: 'The clear and convincing standard[4] is the most demanding required in Social

---

[4] The Commissioner applies the substantial evidence standard when arguing the ALJ did not erroneously discredit Plaintiff's symptom testimony. (Doc. 18 at 3 n.2). The Court will apply the clear and convincing standard according to binding Ninth Circuit case law.

- 5 -

Security cases.'" *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;
>
> (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and
>
> (3) the claimant's daily activities.

*Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

The ALJ summarized Plaintiff's symptom testimony as follows:

> [Plaintiff] testified her primary medical issues deal with her back . . . . [and] that her lower back pain also causes problems with walking. From the knee down her left leg has weakness and numbness. She has had injections with some improvement but did have complications from a medial branch block injection at one point. In her Function Report-Adult, the claimant reported that she has to sit in a recliner most of the day due to her pain (12E:1). She also reported her conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb (*Id.* at 5).

(AR at 33–34). The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 34). In so doing, the ALJ primarily discussed

- 6 -

(1) objective diagnostic and clinical evidence in the record; (2) Plaintiff's ability to carry out daily activities; and (3) Plaintiff's statements to providers and signs of improvements. (*Id*. at 34–36). As will be explained below, the Court finds these reasons insufficient.

### 2. The ALJ Summary of Plaintiff's Symptom Testimony

At the outset, the Court notes the ALJ cited to one exhibit to summarize Plaintiff's symptom testimony: Plaintiff's September 2009 "Function Report-Adult." (*See* AR at 33–34 citing *id*. at 285–292). This report was completed a decade before Plaintiff's most recent surgical revision procedures on January 30, 2019, and January 29, 2020. (Doc. 16 at 5–6). The ALJ parroted a routine checklist to outline Plaintiff's alleged symptoms and did not identify any degrees of limitation. (AR at 290). Thus, it appears the ALJ evaluated "the intensity, persistence and limiting effects of [Plaintiff's] symptoms" without identifying what those intensity, persistence and limiting effects were in first instance. (*Id*. at 34).

Upon review of the record, Plaintiff gave symptom testimony in greater detail at the October 13, 2021, hearing. (*Id*. at 52–57). She indicated *inter alia* that her spinal cord stimulator did not improve her back pain; she had to turn the device off because it caused more pain than relief; she was unable to work because her low back, hip, and leg pain increased with standing and walking; she could be hit by sudden pain attacks while walking where her leg would drop and she would have to hold onto something so that she would not fall; and her left leg was numb and so she had to compensate by carrying most of her weight on the right side. (Doc. 16 at 9–10 citing AR 52–54, 57). She averred she could stand in the same place for about five minutes before having to sit down. She could sit for twenty–thirty minutes at a time and had to lay down for six hours within an eight-hour day because of pain. (AR at 56–57). Such limitations would preclude sustained work.

### 3. Objective Medical Evidence

The ALJ began his discussion of Plaintiff's symptom testimony with an overview of various objective medical evidence. (*Id*. at 34). He acknowledged Plaintiff's magnetic resonance imaging ("MRI") reflected significant lumbar conditions resulted from her back surgeries, including moderate to severe disc narrowing, moderate to severe degenerative

disc disease with disc bulges, disc collapse, vacuum disc, and moderate foraminal stenosis. (*Id.*) Indeed, these conditions support the ALJ's finding that Plaintiff's impairments could reasonably be expected to affect her "ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb[.]" (*Id.* at 35); *Garrison*, 759 F.3d at 1014. However, the ALJ went on to emphasize certain normal findings: an electromyogram "did not show any definite abnormal findings"; an MRI showed disc space narrowing without impingement; Plaintiff's gait and stance were "normal"; Plaintiff had full range of motion in her extremities; Plaintiff had no edema, and no erythema; and Plaintiff had "unremarkable" musculoskeletal examinations. (AR at 34). The ALJ then found that "despite these findings, the undersigned finds the evidence overall, best supports a reduced sedentary residual functional capacity for this younger individual." (*Id.*)

The Commissioner argues the ALJ sufficiently considered the "negative findings" and the "positive findings," to conclude that Plaintiff was capable of sedentary work. (Doc. 18 at 7). Plaintiff opposes, contending the ALJ "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] symptom testimony." (Doc. 16 at 12). The Court agrees with Plaintiff.

Although the ALJ provided a relatively detailed overview of Plaintiff's medical history, "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 494). The ALJ neglected to "identify what testimony [was] not credible and what evidence undermine[d] the claimant's complaints." *Ghanim*, 763 F.3d at 1163. For example, he neither explained (a) why the abnormal findings did not support Plaintiff's symptom testimony; nor (b) why the normal findings should be given more weight than the abnormal findings to discredit Plaintiff's symptom testimony. *See Curtis v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6418486, at *7 (D. Ariz. Dec. 6, 2018) (citing *Garrison*, 59 F.3d at 1009). The ALJ's lengthy discussion of the objective medical evidence, absent any reasons for credibility determinations, is insufficient to reject Plaintiff's testimony under the clear

and convincing standard. *See Lambert*, 980 F.3d at 1277–78; *Burrell v. Colvin*, 775 F.3d 1133, 1137–38 (9th Cir. 2014)).

### 4. Daily Activities

The ALJ next cited to Plaintiff's daily activities, noting Plaintiff "reported independence in selfcare, including meals, hygiene and light housework, denied confinement to a bed and reported adequate sleep." (AR at 34 citing *id.* at 394).[5] A plaintiff's ability to carry out "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (internal quotations and citations omitted). Here, the ALJ made no such indication. Therefore, the Court does not find these activities serve as clear and convincing reasons to reject Plaintiff's symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability [; o]ne does not need to be utterly incapacitated in order to be disabled.").

### 5. Plaintiff's Statements and Signs of Improvements

The ALJ also raised various statements and signs of improvement by Plaintiff.[6] He listed findings of Plaintiff's reduced pain levels; normal gait, movement, and muscle bulk; and use of a cane that was not medically necessary or prescribed. (AR 34–35). Plaintiff contends the ALJ improperly referenced isolated notes of improvement without looking at the record in broader context. (Doc. 16 at 17 citing *Attmore v. Colvin*, 827 F.3d 872, 877

---

[5] The ALJ also raised Plaintiff's trip to Tennessee for two months. (AR. at 34 citing *id.* at 365). Although the ALJ reasoned Plaintiff's trip "suggest[ed] a level of exertion consistent with work related tasks, such as packing clothing, prolonged sitting, either in a car or in a plane, arranging for transportation to and from the airport, checking luggage, and claiming luggage[,]'" he ultimately conceded it did not serve as "conclusive evidence of the [Plaintiff's] ability to perform at an exertional level greater than she alleges." (*Id.* at 35).

[6] The parties dispute whether the ALJ properly relied on reports that predated Plaintiff's onset disability date. (Docs. 16 at 17; 18 at 9). The Court need not address this issue. In any event, the ALJ's reasons for discounting Plaintiff's symptom testimony were insufficient because he did not connect any of the cited improvements back to Plaintiff's symptom testimony.

(9th Cir. 2016)). The Commissioner argues signs of relieving symptoms demonstrates Plaintiff is not as limited as she claimed. (Doc. 18 at 10).

Again, the ALJ emphasized these instances without linking them back to Plaintiff's symptom testimony or articulating why they undermine Plaintiff's credibility. He simply listed these findings to conclude "the examination did not reveal findings that would support greater limitation in the residual functional capacity than already provided for." (*Id*. at 35). Without more, this is an insufficient basis to reject Plaintiff's symptom testimony. *Garrison*, 759 F.3d at 1015.

In sum, the ALJ has not met his burden to give specific, clear, and convincing reasons for his adverse credibility finding because he failed to connect his analysis back to Plaintiff's symptom testimony. *Burrell*, 775 F.3d at 1139. He did not identify which of Plaintiff's testimony was not credible and what evidence undermined her complaints. *Ghanim*, 763 F.3d at 1163. Consequently, the ALJ's error is not harmless. *See Brown-Hunter*, 806 F.3d at 494 (holding it was legal error when the ALJ "never connected the medical record to Claimant's testimony").

### B. Medical Opinion

Second, Plaintiff challenges the ALJ's decision to reject Dr. LaBarre's September 2021 assessment. (Doc. 16 at 19). She maintains the ALJ did not adequately articulate how he considered the supportability and consistency factors when discounting Dr. LaBarre's opinion; he rather "cherry-pick[ed] isolated normal physical examination findings without reconciling the other positive objective findings on examination, on imaging, and supported by [Plaintiff's] aggressive course of treatment[.]" (*Id*. at 24, 22). The Commissioner contends the ALJ properly cited numerous normal findings that contradicted Dr. LaBarre's "extreme" opinion. (Doc. 18 at 12–14). The Court disagrees.

#### 1. Legal Standard

Because Plaintiff applied for disability benefits after March 27, 2017, she is subject to the new regulations for evaluating evidence from medical providers. *See* 20 C.F.R. § 416.920c. The new regulations eliminate the previous hierarchy of

medical opinions, and the ALJ is not allowed to defer to or give specific weight to any medical opinions:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources . . . The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

*Id*. § 416.920c(a).[7] The regulations require an ALJ to articulate how persuasive they find all the medical opinions and prior administrative medical findings and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. *Id*. §§ 404.1520c(b), 416.920(b).

The Ninth Circuit confirmed that the recent changes to the SSA regulations displaced the former hierarchy of medical opinions. *Woods*, 32 F.4th at 787. The longstanding rule that assigned "presumptive weight based on the extent of the doctor's relationship with the claimant [] no longer applies." *Id*. An ALJ no longer needs to articulate "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion. *Id*. at 792. "Now, an ALJ's decision . . . to discredit *any* medical opinion, must simply be supported by substantial evidence." *Id*. at 787 (emphasis added).

However, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all the medical opinions from each doctor or other source and explain how it considered the supportability *and* consistency factors in reaching these findings." *Id.* at 792 (emphasis added). Supportability refers to "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence." *Id*. at 791–92 (quoting

---

[7] Other factors that may, but need not, be considered by the ALJ in addition to supportability and consistency include the provider's relationship with the claimant, the length of the treatment relationship, frequency of examinations, purpose and extent of the treatment relationship, and the specialization of the provider. 20 C.F.R. § 416.920c.

- 11 -

20 C.F.R. § 404.1520c(c)(1)). Consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

### 2. Dr. LaBarre's September 2021 Assessment

The issue is whether the ALJ's explanation to reject Dr. LaBarre's medical opinion was supported by substantial evidence. In her September 2021 Assessment (AR at 629–37), Dr. LaBarre performed orthopedic, thoracic, lumbar, neurological, sensory, and cerebellar exams on Plaintiff. (*Id*. at 632–33). Dr. LaBarre also reviewed Plaintiff's available medical records, including MRIs from 2006 and 2020, and explained how those findings were consistent with her observations of Plaintiff's symptoms. (*Id*. at 633–34). As to Plaintiff's ability to do work related activities, Dr. LaBarre opined Plaintiff could use her hands for less than sixty-six percent of the workday; could carry no more than fifteen pounds; could sit for up to two hours; could stand and walk for up to three hours; needed to alternate between sitting and standing every twenty-one to forty-five minutes; and would miss four to five days of work a month due to her medical condition. (*Id*. at 636–37).

The ALJ found Dr. LaBarre's orthopedic findings unpersuasive because they were inconsistent with the record.[8] (AR at 36–37). To support his conclusion, he summarized (1) certain objective medical evidence; and (2) various findings in Plaintiff's November 2019 examination administered by Douglas R. Denney, PA ("PA Denney"). The Court will examine each reason in turn.

### a. Comparison to Objective Medical Evidence

The ALJ first explained that "[w]hile Dr. LaBarre's examination had many significant positive orthopedic findings, the findings are belied by several other examinations and records in evidence." (*Id*.) He did not define what he meant by

---

[8] The ALJ also rejected Dr. LaBarre's finding of limited hand functions as inconsistent with and unsupported by the record. (AR at 36). However, Plaintiff primarily takes issue with Dr. LaBarre's orthopedic findings. *See Lewis v. Apfel*, 236 F.3d at 517 n.13 (the district court reviews only those issues raised by the party challenging the decision). She only mentions in passing that "the ALJ's rejection of Dr. LaBarre's manipulative limitations . . . does nothing to discredit Dr. LaBarre's assessed sitting, standing, or walking limitations, or limitations related to the effect of Woolley's pain." (Doc. 16 at 21 n.11).

significant positive orthopedic findings. The ALJ then reproduced verbatim the same overview of objective medical evidence that he provided when discounting Plaintiff's symptom testimony. (*Compare id.* at 34 *with id.* at 37). In doing so, he neglected to articulate how he considered the supportability or consistency factors when reaching his findings.

First, he did not articulate the support, or lack thereof, behind Dr. LaBarre's positive orthopedic findings. And it is apparent that Dr. LaBarre's assessment was at least based on (1) the orthopedic, thoracic, lumbar, neurological, sensory, and cerebellar exams she conducted on Plaintiff; and (2) her review of Plaintiff's available medical records, including MRIs from 2006 and 2020. (*Id.* at Ex. 25F, 4–6).

Second, the ALJ did not explain why the evidence he cited belies Dr. LaBarre's orthopedic findings. In fact, the referenced evidence appears to be consistent with Dr. LaBarre's findings. (*Compare id.* at 37 (the ALJ explained Plaintiff's November 2019 imaging reflected "multi-level degenerative change throughout the lumbar spine, including moderate to severe degenerative disc disease at L5-S1") *with id.* at 633 (Dr. LaBarre found "there are progressive changes at L4-5 and L5-S1, consistent with the patient's complaints of progression of her symptoms."); (*compare id.* at 37 (the ALJ explained Plaintiff's July 2020 MRI indicated moderate to advanced degenerative disc disease with disc bulges at L4-L5 and L5-S1, mild bilateral recess stenosis without central canal stenosis, moderate bilateral neural foraminal narrowing and mild bilateral neural foraminal narrowing at L5-S1) *with id.* at 633 (Dr. LaBarre confirmed advanced degenerative disc changes with broad based disc bulges at L4-5 and L5-S, mild bony bilateral neural foramina narrowing, no central canal stenosis or lateral recess stenosis, and the neural foramina have moderate narrowing)).

Thus, the ALJ's citations to objective medical evidence do not serve as a sufficient basis for rejecting Dr. LaBarre's opinion of Plaintiff's orthopedic condition.

/ / /

/ / /

### b. Comparison of Plaintiff's November 2019 Consultative Examination

The ALJ's next reason for rejecting Dr. LaBarre's orthopedic findings is because PA Denney's November 2019 consultative exam did not indicate findings as "extreme" as Dr. LaBarre. (*Id*. at 37). The ALJ reproduced verbatim the same overview of PA Denney's findings that he provided when discounting Plaintiff's symptom testimony. (*Compare id*. at 34 –35 *with id*. at 37). This contrast was to show "the medical record exhibits varying degrees of orthopedic findings." (*Id*. at 37). The ALJ then concluded that "the record better support[ed] finding the claimant is capable of performing work at a reduced sedentary level, and that this finding is supported by objective evidence." (*Id*.)

The ALJ failed to address how he considered the supportability factor in finding Dr. LaBarre's medical opinion to be unpersuasive. And, "[m]erely pointing out . . . varying clinical findings does not explain specifically how [a] medical opinion [is] unsupported." *Scala v. Comm'r of Soc. Sec. Admin*., 2022 WL 3754720, at *3 (D. Ariz. Aug. 30, 2022) (explaining that incongruities between opinions may imply the opinions are inconsistent, but this does not mean they are unsupported). While the ALJ's explanation may discuss the consistency of Dr. LaBarre's orthopedic findings, the revised regulations also require discussion of the supportability factor. *Id*.; *see also Woods*, 32 F.4th at 792.

In sum, although the ALJ sufficiently justified why Dr. LaBarre's opinion regarding Plaintiff's hand functions were unpersuasive, he did not do so for Dr. LaBarre's orthopedic findings. The Court therefore finds the ALJ erred when rendering the entirety of Dr. LaBarre's assessment unpersuasive.

### V. Remand

Once a court has determined an ALJ's decision contains harmful error, it maintains discretion to remand the case for additional proceedings or for an award of benefits. *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998) (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178

(9th Cir. 2000). This is "the proper course, except in rare circumstances[.]" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Conversely, under the "credit-as-true" rule, the court has discretion to remand for an award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted).

Plaintiff argues her case meets the credit-as-true standard because there are no "significant factual conflicts," or "crucial questions as to the extent of [claimant's] impairment" that require resolution before a finding of disability. (Doc. 16 at 24 quoting *Treichler*, 775 F.3d at 1104–1105). However, the Court finds it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further analysis of Plaintiff's subjective symptom testimony and evaluation of the medical evidence are necessary before a proper determination of Plaintiff's disability can be made. Therefore, the Court, in its discretion, finds that a remand for further proceedings is appropriate here.

## VI. Conclusion

The ALJ committed legal error when he failed to provide legally sufficient reasons for (1) discounting Plaintiff's symptom testimony; and (2) rejecting Dr. LaBarre's assessment of Plaintiff's orthopedic condition and work-related abilities. The Court finds these errors warrant remand for further proceedings.

Accordingly,

**IT IS ORDERED** that Administrative Law Judge's October 28, 2021, decision is reversed and remanded for additional proceedings.

/ / /

/ / /

/ / /

- 15 -

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and terminate this action.

Dated this 26th day of September, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge